UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

TOM TRAINI,

                Plaintiff,                       Case No. 1:11-cv-832

v.                                          Honorable Gordon J. Quist

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.[1]

The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).   Applying these standards, Plaintiff's action will be dismissed on immunity

grounds and/or for failure to state a claim.

---

[1] The complaint originally was filed in the Ingham County Circuit Court and was removed to this Court on August 10, 2011, by Defendant Prison Health Services, Inc.

**Discussion**

I.      Factual allegations

Plaintiff Tom Traini presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Gus Harrison Correctional Facility (ARF), though the actions underlying his complaint also occurred while he was housed at the Lakeland Correctional Facility (LCF).  Plaintiff sues the MDOC, Prison Health Services, Inc., and the following MDOC employees:  Director Patricia Caruso; Deputy Director Dennis Straub; Assistant Deputy Director/ Special Activities Coordinator Michael Martin; Chief Medical Officer Dr. Jeffery Stieve; and Assistant Region III Health Care Administrator Alfred Jones.  He also sues the following LCF employees:  Health Unit Manager Nancy Lange; Corrections Officer (unknown) Waffle; Warden Carol Howes; Chaplain Donald Thompkins; Dr. Bhamini Sudhir; Mailroom Supervisor Ronald Dutton; Mailroom Employees Cheryl Reincks and Patt Schmidt; and Physician's Assistant (PA) Rosalyn Jindal.  In addition, he sues the following ARF employees:  Acting Warden Lee McRoberts; Assistant Deputy Wardens (ADW) Wallis Chapman and P. Deleeuw[2]; Deputy Administrative Assistant Virgil Webb; Resident Unit Manager (RUM) (unknown) Condon; Assistant Resident Unit Supervisor (ARUS) G. Gibbs; Mailroom Supervisor M. Smetka; Property Room Supervisor (unknown) Lewis; Dietician Joan Rogers; and Nurse Supervisor Tammy Rathhaar.

Plaintiff raises a variety of claims in his complaint.  First, he alleges that he was transferred from LCF to ARF by "prison officials" in retaliation for having engaged in a variety of protected conduct:  (1) making complaints about issues in his role as a Warden's Forum representative; (2) joining a lawsuit filed by the ACLU against LCF regarding the failure to provide a Halal diet; (3) reporting to the courts and the media that LCF was feeding inmates meat products

---

[2]Although Plaintiff spells Defendant's name as "Deleeuw" in the caption of his complaint, at various points in the body of the complaint he spells it "Odeeuw."  For purposes of this opinion, the Court has used the name set forth in the caption.

that had been expired for more than 26 months; (4) filing a grievance against Chaplain Thompkins

for providing religious literature that was anti-Islam; (5) filing a grievance against Defendant Waffle

because Waffle was disrespectful in the dining hall about Plaintiff's special accommodation to sit

at a handicap table; (6) refusing to drop his grievances against Defendants Thompkins and Waffle;

and (7) advising an unspecified RUM that he intended to file a civil action about the rejection of

incoming Arabic mail.  Plaintiff alleges that he was transferred one day after LCF Warden Howes

and an unidentified administrative assistant[3] told him to drop his grievances and complaints and

threatened him with a transfer if he did not do so.  Plaintiff alleges that he has written letters,

complaints, and grievances to LCF Warden Howes, ARF Acting Warden McRoberts, and other

administrators, but they have failed to investigate his claim.  He contends that they are liable for

failing to act on his grievances.

       Second, Plaintiff complains that mailroom employees (Defendants Dutton, Reincks,

Schmidt and Smetka) and the wardens at LCF and ARF have violated his rights to free speech, due

process, and equal protection because Defendants refuse to allow the receipt of incoming mail that

is written in Arabic.  Plaintiff alleges that his family members in Jordan only speak Arabic.  Plaintiff

filed grievances against the wardens and mailroom employees based on their rejection of his

incoming mail.  Plaintiff claims that he made an effort to resolve the issue and was punished with

a transfer by an unnamed Defendant.  Plaintiff alleges that ARF mailroom employees violated his

rights in the same manner.  He claims that he did not suffer such deprivations while he was housed

at the Charles Egeler Correctional Facility and the Muskegon Correctional Facility.

       Third, Plaintiff complains that he was denied "adequate medical treatment for injuries

sustained to his lower spine, tail bone, right shoulder, both knees, right hip, stomach, arthritis and

---

[3]The only administrative assistant named as a Defendant in the complaint is Virgil Webb, who is employed at
ARF, not LCF.

severe dizziness." (Compl., docket #1-3, Page ID#13.)  Plaintiff alleges that Defendant LCF Dr. Sudhir was negligent and deliberately indifferent in allowing Plaintiff's medical record to be transferred to ARF, notwithstanding the fact that Plaintiff was on a reflux diet and had a handicap seating accommodation, neither of which ARF provides.  Plaintiff also complains that ARF improperly cancelled his special accommodation for those things and that neither LCF nor ARF provides an adequate diet for his stomach and other health needs.  Plaintiff states that he believes that Dr. Sudhir conspired with Warden Howes and other staff members to have Plaintiff transferred to ARF.  Plaintiff alleges that Defendant ARF health care officials Jindal, Stieve, Douglas, Rathhaar and Rogers were negligent in cancelling Plaintiff's special accommodations and that their actions were part of a conspiracy with LCF Dr. Suhir.  He adds that Defendants demonstrated deliberate indifference by telling Plaintiff to file a grievance.

Fourth, Plaintiff complains that he was punished by a series of cell transfers at ARF. He eventually was moved into a cell that was half-full with another inmate's property.  Because Plaintiff is educated and a legal researcher for other inmates, Plaintiff has four footlockers containing legal property.  Due to the lack of space, Plaintiff's legal footlockers were stacked on top of one another.  Plaintiff has a medical detail not to lift anything over 10 pounds, and he is unable to move the footlockers unassisted.  Plaintiff wrote numerous requests to Defendants McRoberts, Deleeuw, Chapman, Condon and Gibbs, asking to be moved to a different cell because he could not lift his footlockers.  Plaintiff also spoke to Defendant Gibbs personally about the issue.  Gibbs responded, "[G]o deal with your situation you are engineer why don't [you] find resolution to this issue." (*Id.*, Page ID#16.)

Fifth, Plaintiff alleges that he is being subjected to discrimination and retaliation when unnamed ARF officers search his cell more frequently than any other inmate on the block.

- 4 -

He further contends that unnamed individuals have taken some of his property without a notice of intent.  In addition, after Plaintiff ordered a winter coat from an approved vendor, Defendant Gibbs told Defendant Lewis to reject the coat because the color was not approved at the facility.  Plaintiff asked to be permitted to return the coat to the vendor, but Gibbs denied his request.  Plaintiff contends that the various conduct was racially motivated and retaliatory.

The remainder of the complaint consists of a series of legal conclusions about each Defendant's responsibility for the constitutional and state-law violations implicated by the previously described factual allegations.  (*See* Compl., Page ID ##17-28.)  Plaintiff makes no further allegations of fact in support of any claim.

For relief, Plaintiff seeks a declaratory judgment and injunctive relief, together with compensatory and punitive damages.

II.      Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v.*

- 5 -

*Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of

Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be

sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses the

Michigan Department of Corrections.

       III.    <u>Failure to state a claim</u>

       A complaint may be dismissed for failure to state a claim if "'it fails to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.").  The court must determine whether the complaint contains

"enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct.

at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at

1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Conspiracy

Plaintiff alleges that the various Defendants at LCF conspired with one another and with Defendants from ARF to retaliate against Plaintiff for exercising his First Amendment right to file grievances and/or a lawsuit. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim."

*Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996); *see also Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no fact in support of any of the elements of a conspiracy; instead, he simply states the ultimate conclusion. Such conclusory statements fail to state a conspiracy claim against any Defendant.

### B.    Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Caruso, Straub, Martin, Stieve, McRoberts, Deleeuw, Chapman, Condon, Jones, and PHS other than his claim that Defendants failed to supervise their subordinates or failed to properly respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948 at; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Caruso, Straub, Martin, Stieve, McRoberts, Deleeuw, Chapman, Condon, Jones, and

PHS engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

## C.    Retaliation

Plaintiff alleges that he was transferred from LCF to ARF in retaliation for having filed complaints and grievances against various individuals and for being a plaintiff in a lawsuit filed by the ACLU against LCF.  *See Dowdy-El et al v. Caruso et al.*, 2:06-cv-11765 (E.D. Mich.).   In addition, Plaintiff complains that Defendant Waffle was disrespectful and unprofessional toward Plaintiff while he was in the dining hall.  Plaintiff also alleges that Defendant Gibbs retaliated against him by placing him in a cell crowded with another prisoner's possessions, forcing Plaintiff's legal footlockers to be stacked.  Further, Gibbs allegedly retaliated against Plaintiff by telling Defendant Lewis to reject the winter coat that Plaintiff had ordered and by refusing to allow Plaintiff to pay shipping costs to return the item to the vendor for another color.  Moreover, Plaintiff asserts that unnamed officers at ARF have searched his cell more often than others in retaliation for unspecified activities.  Finally, Plaintiff complains that the LCF warden and administrator retaliated against him by not resolving his grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)

(citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

   Plaintiff fails to state a claim of retaliation based on the transfer or any other alleged

harm.  The filing of a prison grievance is constitutionally protected conduct for which a prisoner

cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall*

*v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No.

00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).  Plaintiff therefore has adequately

alleged the first element of a retaliation claim.

   Plaintiff cannot, however, demonstrate that he was subjected to any action that would

be sufficiently adverse to support a retaliation claim.  Plaintiff's principal claim is that he was

subjected to a retaliatory transfer from LCF to ARF.  "Since prisoners are expected to endure more

than the average citizen, and since transfers are common among prisons, ordinarily a transfer would

not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."

*Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).  *See, e.g., Smith v. Yarrow*, 78 F. App'x.

529, 543 (6th Cir. 2003) ("[T]ransfer from one prison to another prison cannot rise to the level of

an adverse action because it would not deter a person of ordinary firmness from the exercise of his

First Amendment rights") (internal quotation marks omitted).   If, however, a foreseeable

consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts,

then such a transfer could be considered an "adverse action" that would deter a person of ordinary

firmness from continuing to engage in the protected conduct.  *See Siggers-El*, 412 F.3d at 702

(holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high

paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v.*

*Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007).  Similarly, the

Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill v. Lappin*, 630 F.3d 468, 473-75 (6th Cir. Dec. 2010) (transfer to a segregated unit is sufficiently adverse).

Plaintiff's transfer was from one level II facility to level II confinement at a multi-security facility housing levels I, II and IV. Plaintiff complains that Warden Howes threatened to transfer him to a strict facility as a disciplinary punishment. Plaintiff acknowledges that he remains in level II confinement, but he contends that ARF is a relatively strict facility compared with LCF. Notwithstanding Plaintiff's characterization of ARF as a "mental health facility," (*see* Compl., Page ID#31), Plaintiff's allegations fall far short of demonstrating that he was transferred to a segregation unit or to a unit reserved for mentally disturbed inmates. *See Hill*, 630 F.3d at 474 (distinguishing between routine transfers and transfers that are sufficiently restrictive as to amount to adverse action).[4]

Plaintiff's claim that Defendant Waffle was disrespectful on one occasion similarly fails to rise to the level of adverse action. No reasonable person would be deterred from exercising his constitutional rights by an officer's use of disrespectful language or behavior on one or more occasions.

Next, Plaintiff's claims against Defendant Gibbs fail under the third prong of the retaliation test: that the exercise of the protected right was a substantial or motivating factor in the Gill's alleged retaliatory conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th

---

[4]The Court takes judicial notice that ARF is not a facility reserved for mental health patients. *See* http://www.michigan.gov/corrections/0,4551,7-119-1381_1385-5359--,00.html (describing the ARF facility, including its security levels and programming).

Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp.

501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact

of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987));

*see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory

allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*,

No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995

WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3

(6th Cir. Dec. 2, 1994).  Here, Plaintiff alleges that he engaged in protected conduct while he was

housed at LCF.  Defendant Gibbs was an officer at ARF, a facility located on the opposite side of

the state.  Plaintiff provides no allegations that Gibbs was aware of Plaintiff's protected conduct at

LCF or had any connection to the actions of LCF employees, beyond Plaintiff's previously

discussed conclusory allegation that all Defendants conspired in a pattern of conduct.

> Finally, Plaintiff's allegation that unidentified ARF officers searched his cell more
frequently than other cells fails to show retaliation by any named Defendant.  First, Plaintiff fails
to name any Defendant as a participant in the allegedly retaliatory cell searches.  Second, as with
Defendant Gibbs, Plaintiff alleges no facts demonstrating a connection between his protected
conduct at LCF and the actions of the unnamed LRF employees.

> For all these reasons, Plaintiff fails to state a retaliation claim against any named
Defendant.

### D.     Eighth Amendment

Plaintiff names numerous health care providers from both LCF and ARF:  Defendants Lange, Sudhir, Jindal, Stieve, Douglas, Rathhaar and Rogers.  Plaintiff's allegations about his need for medical care, however, are extremely limited and general.  He complains broadly that unnamed individuals at Coldwater Correctional Facility denied him "adequate medical treatment for injuries sustained to his lower spine, tail bone, right shoulder, both knees, right hip, stomach, arthritis and severe dizziness."  (Compl., Page ID#13.)  Plaintiff alleges that LCF Defendant Dr. Sudhir "was negligent and deliberately indifferent to conspire with Coldwater Correctional Facility to sign Plaintiff[']s medical record to be transferred to [ARF] while Plaintiff was under a special accommodation order for 'Reflux Diet & Handicap [S]eated Area[] that ARF doesn't provide." (*Id.*) He also alleges that both LCF nor ARF provided food that went against Plaintiff's stomach and other needs.  Finally, he complains that the named ARF health care officials removed Plaintiff's special accommodations, in violation of his rights under the Fifth, Eighth and Fourteenth Amendments, because they had been instructed by Stieve to not honor medical details from another facility.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective

component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

- 14 -

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Here, Plaintiff makes only the vaguest allegations about his alleged medical conditions.  He does not describe his symptoms, nor does he indicate which, if any, Defendants were aware of and ignored any particular symptoms.  He also does not name any Coldwater Correctional Facility employee as a defendant.  Instead, Plaintiff alleges only that ARF officials took him off a reflux-diet accommodation issued by another institution and that he was on unspecified occasions issued food by both LCF and ARF that was not consistent with his reflux condition.  Such allegations fall far short of demonstrating either an objectively serious and obvious medical need

- 15 -

or that any Defendant was deliberately indifferent to that need.  Plaintiff does not allege that he

could not obtain adequate food from the regular food service line that would be compatible with his

reflux condition or that Defendants refused to treat his reflux by any other method.

   Moreover, Plaintiff fails to identify any occasion on which he was denied medical

care for any of his medical conditions or the name of the individual Defendant who was involved

in any such denial.  Instead, he makes a wholly conclusory allegation that his medical treatment by

all Defendants was inadequate.  An allegation that treatment was inadequate suggests strongly that

at least some treatment was received, even if Plaintiff was unhappy with the course of that treatment.

Moreover, conclusory allegations of unconstitutional conduct without specific factual allegations

fail to state a claim under § 1983.  *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to

relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).  Plaintiff's conclusory allegations

fall far short of alleging facts that would support a plausible Eighth Amendment claim against any

Defendant.

## E. Mail Rejections

   Plaintiff complains that Defendant mail room employees Dutton, Reincks, Schmidt,

and Smetka, and Defendant Warden Howes and Acting Warden McRoberts violated Plaintiff's

rights under the First Amendment and the Equal Protection Clause by rejecting incoming mail from

Plaintiff's Jordanian family members because the letters are written in Arabic.  Plaintiff claims that

his family only reads and writes in Arabic.  He declares that, because his family lives in Jordan, mail

is the only form of communication available to him.

Although there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). In *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989), the Supreme Court held that regulations governing incoming correspondence to prisoners are valid if they are "reasonably related to legitimate penological interests." The *Thornburg* Court recognized that incoming mail poses a more serious risk to prison security than outgoing mail, and it emphasized that courts must afford substantial deference to prison officials. *Id.* at 413 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) (addressing restrictions on incoming mail from other prisoners).

The *Thornburgh* Court applied four factors relevant to the inquiry whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Id.* at 414-18 (citing *Turner*, 482 U.S. at 88-91).

Under MDOC prison policy, certain types of incoming mail are prohibited. MICH. DEP'T OF CORR. 05.03.118, ¶ MM. Such prohibited mail includes the following:

> Mail written in code, or in a foreign language that cannot be interpreted by institutional staff to the extent necessary to conduct an effective search. If facility staff are not available, the facility head may authorize the use of another reliable interpreter. Prisoners shall not be used as interpreters.

*Id.*, ¶ MM(17).   The exclusion of the foregoing materials is based upon the Michigan Department of Corrections' conclusion that the items "may pose a threat to the security, good order, or discipline

- 17 -

of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner" PD 05.03.118, ¶ MM.  The MDOC's stated rationale for rejecting indecipherable mail unquestionably articulates a valid, rational connection between the regulation and the legitimate governmental interest which it allegedly furthers.  As a consequence, the first factor of the *Thornburgh* inquiry favors upholding the regulation.

Plaintiff argues that the second prong of the inquiry – whether there are alternative means by which the inmate may exercise the right impinged – weighs heavily in his favor.  He contends that, because his family resides in Jordan, they cannot visit him personally and he cannot communicate with them by telephone.  Plaintiff's argument is without merit.  Even if his family members speak only Arabic, they are entirely capable of employing translation services in their own country in order to transcribe their correspondence into English.  Moreover, they are capable of communicating their messages through individuals in this country who may visit or receive telephone communications from Plaintiff.

With respect to the third prong, accommodation of Plaintiff's demand would place an extreme burden on prison resources.  If the Court were to accept that Plaintiff is entitled to an Arabic interpreter, the Michigan Department of Corrections would be required to employ staff members at every prison capable of interpreting not only Arabic, but every language spoken by its inmates.  As a consequence, the third *Thornburgh* factor weighs in favor of the policy restriction.

Finally, Plaintiff fails to allege the existence of a ready alternative to the rejection of mail that cannot be deciphered by prison officials that would protect the legitimate penological objective of the institution.  Nor is the Court aware of any such alternative.  As a result, the fourth factor also cuts in favor of the mail restriction

In sum, all four factors of the *Thornburgh* test support the conclusion that the prison mail policy is within the reasonably legitimate penological objectives of the prison officials. Moreover, Plaintiff fails to suggest that the mail policy has been misapplied to his incoming mail. Plaintiff makes no allegation that any of the named Defendants is capable of interpreting Arabic or that any staff member at LCF or ARF was capable of making the necessary translation.   As a consequence, Plaintiff fails to demonstrate a First Amendment violation.

To the extent that Plaintiff claims that the rejection of his Arabic mail constitutes discrimination on the basis of his national origin or religion, he fails to articulate an Equal Protection claim.   The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.   U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).   When a governmental action adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.   However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948).   "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security."   *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner*, 482 U.S. at 84).   To establish a violation of the Equal Protection Clause, an inmate must show that the Defendants purposefully

- 19 -

discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66.

Here, Plaintiff fails entirely to allege facts that would suggest that he was subjected to purposeful discrimination by any Defendant. His allegation of discrimination is wholly conclusory. Indeed, he fails to identify any inmate receiving incoming mail written in a foreign language who was not subject to the incoming mail policy. Plaintiff therefore fails to state an equal protection claim.

Finally, Plaintiff conclusorily alleges that rejection of his mail violated his right to due process. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

It is true that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds, Thornburgh*, 490 U.S. 401). Plaintiff, however, fails to allege any deprivation of necessary process. Under the MDOC policy governing the rejection of prisoner mail, an inmate is entitled to a Notice of Package/Mail Rejection, and the prisoner is entitled to a fact-finding hearing. *See* MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶¶ E, OO, PP. Plaintiff

fails entirely to allege that any Defendant failed to issue a notice of intent to reject the mail or that he was deprived of his right to be heard. He therefore fails to state a procedural due process claim.

Plaintiff has no substantive due process interest in his incoming mail. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, the First Amendment provides the source for constitutional protection. Accordingly, Plaintiff fails to state a substantive due process claim based on the rejection of his mail.

## F.     Property Claim

Plaintiff complains that the winter coat he ordered through an authorized vendor was improperly rejected by Defendants Gibbs and Lewis. Although Plaintiff does not invoke the Due Process Clause, he arguably intends to claim that, by rejecting the coat, Defendants deprived Plaintiff of his personal property without due process.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of

- 21 -

state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, the Court will dismiss Plaintiff's due process claim.

### G. Defendant Thompkins

Plaintiff claims that Defendant Thompkins provided literature to unidentified prison inmates that was anti-Islam in nature and that the literature was part of Thompkins' anti-Islam campaign. Plaintiff does not raise a claim that he personally was subjected to discrimination by Thompkins. Instead, he merely claims that he filed a grievance against Thompkins, which ultimately was the reason for retaliatory conduct by other Defendants. The Court previously has

rejected Plaintiff's retaliation claims. As a consequence, Plaintiff fails to state a constitutional claim against Defendant Thompkins.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  September 30, 2011                                 _____/s/ Gordon J. Quist_____
                                                          GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE